# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| FOR LIFE PRODUCTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:20CV00016 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| UNIVERSAL COMPANIES, INC., | ) | By: James P. Jones |
| ET AL., | ) | United States District Judge |
| Defendants. | ) | |
| | ) | |

*Terry L. Clark, Matthew D. Zapadka, and Brian R. Iverson,* BASS, BERRY & SIMS, PLC, *Washington, D.C., for Plaintiff;* Geoffrey M. Bohn, BOHN & BATTEY, PLC, *Arlington, Virginia, and Shawn R. Farmer,* MUSKIN & FARMER, LLC, *Lansdale, Pennsylvania, for Defendants.*

In this intellectual property case, For Life Products, LLC ("For Life Products") has sued defendants Universal Companies, Inc., ("Universal Companies") and Virox Technologies, Inc. ("Virox") alleging various trademark and unfair competition claims, including fraudulent procurement of a trademark and cancelation of a descriptive trademark. The defendants have moved under Rules 12(b)(6) and 9(b) to dismiss the latter two claims. For reasons that follow, the motion will be denied.

I.

The plaintiff alleges in the First Amended Complaint the following facts, which I must take as true and draw all factual inferences in the plaintiff's favor for the purpose of deciding the Motion to Dismiss.

A.

For Life Products manufactures and sells household and commercial cleaning, restoration, and surface care products under several of its Rejuvenate trademarks.[1] For Life Products launched its Rejuvenate line in 1999. Its catalog now lists over 70 Rejuvenate products to treat a variety of surfaces, including hardwood, vinyl, laminate, tile, grout, countertops, upholstery, clothing, furniture, as well as automobiles, and boats. For Life Products markets many products, such as Rejuvenate all-purpose cleaner, antibacterial floor cleaner, and all floors quick clean wipes. For Life Products' products are sold through commercial retailers like Amazon, Home Depot, Lowe's and Walmart.

In 2006, For Life Products registered with the United States Patent and Trademark Office ("USPTO") the Rejuvenate trademark for polishes on floors, cabinets, and furniture. Over the next few years, For Life Products registered similar trademarks with the USPTO for other goods, such as Rejuvenate Deep Clean!, an

---

[1] For clarity, hereinafter For Life Products' trademarks will be styled as "Rejuvenate" and Virox's trademark will be styled as "REJUVenate."

all-purpose cleaner; Rejuvenate Refresher for household cleaning products; Rejuvenate Megaclean, a laundry pre-treatment and stain remover for fabrics, clothing, and carpet; and Rejuvenate Versa Clean for household mops. For Life Products has used Rejuvenate for surface care products since January 2016.

On September 3, 2019, Virox registered with the USPTO a similarly styled trademark, REJUVenate for use on "[a]ll-purpose disinfectants for infection control and prevention and biosecurity." First Am. Compl. ¶ 59, ECF No. 49. Virox has marketed its products to salons, spas, medical offices, and cruise ships, selling them through the website of its exclusive distributor, defendant Universal Companies, and on Amazon.com.

Although the USPTO has granted Virox the exclusive right to use REJUVenate only on the category of goods described above, the plaintiff alleges that the defendants have intentionally used Virox's trademark on cleaning products that fall within the scope of goods covered by For Life Products' mark. According to the First Amended Complaint, Virox and Universal Companies have marketed and sold REJUVenate disinfectant cleaner, disinfectant cleaner concentrate, and disinfectant cleaner ready to use spray on Amazon, causing customers to purchase Virox's products under the mistaken belief that For Life Products manufactures them. The First Amended Complaint alleges that Virox fraudulently induced the USPTO to issue the REJUVenate mark by mischaracterizing the goods it would use

in connection with the mark, and making materially false statements or omissions about whether anyone else had the right to use a similar mark in a way that would likely cause confusion.

B.

The allegations of fraud begin with Virox's initiation of its trademark applications. On January 20, 2017, Virox's trademark agent, Dolly Kao, filed a Canadian trademark application to register REJUVenate for "all purpose cleaning preparations" in Class 003 and "all purpose disinfectants" in Class 005. *Id*. ¶ 43.[2] The next day, January 21, 2017, Virox filed a similar application with the United States PTO to register REJUVenate in Class 003 for "all purpose cleaners" and in Class 005 for "disinfectants." *Id*. ¶ 44. Virox pursued registration in the United States on the bases of its pending Canadian application under 15 U.S.C. § 1126(d), and Virox's use or intent to use the mark in commerce under 15 U.S.C. § 1051(a), (b). On April 25, 2017, the United States trademark examiner sent a letter to Kao rejecting Virox's application because it was confusingly similar to For Life

---

[2] Dolly Kao served as Virox's registered trademark agent and submitted filings on Virox's behalf to the Canadian Intellectual Property Office and USPTO. Kao filed some documents "c/o Dolly Kao Professional Corporation" and others with a letterhead or email address corresponding to Perry + Currier Patent and Trademark Agents. First Am. Compl. Ex. 11, Canadian Trademark File 7, ECF No. 49-11; *Id*. at Ex. 12, USPTO Trademark File 83, ECF No. 49-12.

Products' registered trademarks for Rejuvenate Deep Clean, Rejuvenate Refresher, and Rejuvenate Auto. *Id*. at Ex. 12, USPTO Letter 119–3, ECF No. 49-12.

To cure this deficiency, Virox made the first alleged misrepresentation—mischaracterizing its goods to appear different than those covered under For Life Products' trademark. Kao's October 23, 2017, amendment to Virox's USPTO application deleted the Class 003 goods and changed the Class 005 description from "disinfectants" to "[a]ll-purpose cleaner disinfectants for infection control and prevention and biosecurity." *Id*. at Kao Letter 78, ECF No. 49-12.

Virox made a second fraudulent statement when it attached to that amendment an October 23, 2017, declaration of Randy Pilon, Virox's CEO, stating that Virox's applied-for trademark "will be used on all-purpose cleaner disinfectants for infection control and prevention and biosecurity. The subject goods are disinfectants with cleaning properties. Virox does not make and sell cleaning products, *per se*." *Id*. ¶ at Ex. 13, Pilon Decl. 1, ECF No. 49-13.

Virox's third fraudulent statement was made after it received notice about its Canadian trademark application. On October 26, 2017, the Canadian examiner wrote to Kao, reporting that Virox's REJUVenate mark was not registerable because it "is considered to be confusing with" For Life Products' Canadian Rejuvenate trademark. *Id*. at Ex. 11, at 35, ECF No. 49-11. After Virox unsuccessfully tried to amend its Canadian application, the Canadian examiner objected on the same

grounds in a May 23, 2018, letter to Perry + Currier. That letter stated that placing REJUVenate and For Life Products' Canadian mark, "in the same area would lead the average Canadian consumer of average intelligence to immediately conclude that the goods emanate from" For Life Products. *Id*. at 34. These issues would cause Virox to eventually abandon its Canadian trademark application. Consequently, Virox could no longer rely on that foreign application as a basis to register REJUVenate with the USPTO.

In order to register REJUVenate on the only remaining basis, use or intent to use in commerce, Virox told the USPTO that no one else had the right to use a similar mark in a way that would cause confusion, even though Virox had been advised to the contrary. Indeed, to register a mark based on use or intention to use the mark in commerce, the applicant must submit a verified statement, attesting that "no other person has the right to use such mark in commerce either in the identical form thereof or in such near resemblance" in a manner that would make it "likely . . . to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1051 (a)(3)(D), (b)(3)(D). To meet this requirement, on October 26, 2018, Virox submitted a declaration signed by Randy Pilon, stating:

> To the best of the signatory's knowledge and belief, **no other persons**, except, if applicable, authorized users, members, and/or concurrent users, **have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely**, when used on or in connection with goods/services/collective membership

organization of such other persons, **to cause confusion or mistake, or to deceive**.

First Am. Compl. Ex. 12, Pilon Decl. 33–34, ECF No. 49-12 (emphasis added). This statement was false because Virox submitted it after examiners had put it on notice that REJUVenate could be confused with For Life Products' Canadian and American marks.

On September 3, 2019, the USPTO issued Virox a trademark for REJUVenate. The plaintiff claims that Virox fraudulently procured the mark, as the USPTO only granted the application because Virox mischaracterized its goods, and falsely disclaimed the likelihood of confusion with other marks. The plaintiff further alleges that REJUVenate is insufficiently distinct to warrant trademark protection because it merely describes the function of Virox's products and has not attained a secondary meaning.

The defendants have moved to dismiss Count V of the First Amended Complaint (fraud on the USPTO) under Rule 12(b)(6), arguing that the plaintiff does not plausibly allege the identified statements were knowingly false, material, or made with fraudulent intent. They contend that Count V should alternatively be dismissed under Rule 9(b), because the plaintiff does not allege the circumstances of the fraud with particularity. Finally, the defendants argue that Count VI of the First Amended Complaint (cancellation of a descriptive trademark) should be dismissed because REJUVenate does more than simply describe the function of

Virox's products. The Motion to Dismiss has been fully briefed and is ripe for review.[3]

II.

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court's "inquiry is to determine whether the facts alleged in the plaintiff's complaint are legally sufficient to state a claim upon which relief can be granted." *Fessler v. IBM Corp.*, 959 F.3d 146, 151–52 (4th Cir. 2020). "Because only the legal sufficiency of the complaint, and not the facts in support of it, are tested under a Rule 12(b)(6) motion, [the court] assume[s] the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Id.*[4] "To survive a motion to dismiss, [the court] require[s] 'only enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Fraudulent procurement is a type of fraud claim and thus subject to the heightened pleading requirements of Rule 9(b). To satisfy Rule 9(b), a plaintiff must plead "the time, place, and contents of the false representations, as well as the

---

[3] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

[4] Internal quotations, marks, citations, and alterations are omitted throughout this Opinion unless otherwise specified.

identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Fraudulent "intent . . . may be alleged generally." Fed. R. Civ. P. 9(b). A fraud claim likely passes muster under Rule 9(b) "if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784.

III.

"A third party may petition to cancel a registered trademark on the ground that the registration was obtained fraudulently." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009). To succeed on a fraudulent trademark procurement claim, a plaintiff must show that the defendant "knowingly made false, material representations of fact and intended to deceive the Patent and Trademark Office." *Resorts of Pinehurst, Inc. v. Pinehurst Nat. Corp.*, 148 F.3d 417, 420 (4th Cir. 1998).

The plaintiff asserts that Virox made fraudulent statements in October 2017 when Kao and Pilon mischaracterized Virox's goods, and when Pilon disclaimed confusion with similar marks on October 26, 2018. However, the defendants argue that the First Amended Complaint has not alleged those statements were false, intended to defraud, or material. They further contend that the First Amended Complaint has not alleged the fraud with particularity as required by Rule 9(b).

A.

The plaintiff has plausibly alleged that Kao and Pilon's descriptions of Virox's goods were false. Specifically, the plaintiff claims that Virox describing its goods as all-purpose disinfectants for infection control and prevention and biosecurity creates a "false distinction" with the cleaning products that are within the scope of For Life Products' mark. First Am. Compl. ¶ 63, ECF No. 49. On the other hand, the defendants counter that the description is not actually false because its goods are "disinfectants with cleaning properties." Resp. Opp'n Mot. Dismiss 8, ECF No. 63. Whether Virox's products are actually disinfectants as it represented to the USPTO, cleaners as For Life Products suggests, or both, is a factual question that may be determined at a later stage of litigation by the fact-finder, perhaps with the assistance of expert testimony.[5] At this juncture, I must accept as true For Life Products' well-pled allegation that Virox's characterization was false.

Additionally, the plaintiff plausibly alleges that Virox mischaracterized its goods with fraudulent intent, namely to deceive the USPTO into registering the mark. Virox had been repeatedly unsuccessful in registering its trademark to use with other goods. After the USPTO denied the use of REJUVenate on cleaners,

---

[5] Virox's motion to dismiss points to different scientific definitions of disinfectants and cleaners to argue that its products fall within the former category. Reply Supp. Mot. Dismiss 13, ECF No. 67. But these are facts outside the First Amended Complaint thatI cannot consider at the motion to dismiss stage.

Virox corrected course and represented that it would only use REJUVenate on all-purpose disinfectants.  But according to the plaintiff, the defendants still used the mark on cleaning products.  These allegations permit the inference that any false mischaracterization of the products as disinfectants was intentionally deceptive.

Finally, the plaintiff has plausibly alleged that Kao and Pilon's descriptions of Virox's goods were material.  Because the USPTO had previously rejected Virox's application to use REJUVenate on cleaners due to the likelihood of confusion with For Life Products' mark, it is reasonable to infer that describing Virox's goods in a way that distinguished them from the cleaners within the scope of For Life Products' mark was necessary for registration.

Virox argues that even if describing its products as disinfectants was false, that description was not be material because the patent examiner knew that Virox intended to use REJUVenate on products with cleaning properties and approved the application anyway.  Indeed, Pilon's October 27, 2017, declaration representing that Virox would use REJUVenate on "disinfectant products" included samples of Virox's products labeled as "disinfectant cleaners."  First Am. Compl. Ex. 12, Pilon Decl. 83–118, ECF No. 49-12.  But this argument assumes that the examiner actually reviewed and considered these product samples.  It also fails to account for the plausible scenario that the examiner reasonably expected Virox would only use REJUVenate on disinfectant products as the application purported, even if it had

sold disinfectant cleaners in the past. In any event, the defendants' arguments to bely materiality sidestep the operative question at this procedural stage, namely whether there are sufficient factual allegations to plausibly infer materiality.

B.

The First Amended Complaint also contains sufficient factual allegations to support a claim of fraud for Pilon's October 26, 2018, disclaimer that REJUVenate would not likely be confused with similar marks. The defendants contend that this statement cannot be fraudulent because Pilon subjectively believed the statements to be true "[t]o the best of [his] knowledge and belief." Mem. Supp. Mot. Dismiss 9, ECF No. 62-1. Indeed, "[t]here is no fraud if a false misrepresentation is occasioned by an honest misunderstanding or inadvertence without a willful intent to deceive." *In re Bose Corp.*, 580 F.3d at 1246. Moreover, a plaintiff must show "subjective intent to deceive" to succeed on a fraudulent procurement claim. *Id*. at 1245 (holding that a false statement occasioned by an "honest misunderstanding" does not establish a subjective intent to deceive). Thus, according to the defendants, Pilon's caveat renders any false statement in the declaration a good faith belief incapable of evidencing fraudulent intent. But these arguments invite inappropriate factual determinations at the motion to dismiss stage.

What is relevant at this juncture is that the First Amended Complaint contains sufficient allegations to plausibly infer that Pilon's disclaimer was false, material

and made to deceive the USPTO. The statement is alleged to be false because Pilon knew there would be a likelihood of confusion with For Life Products' mark as the USPTO and Canadian examiners had denied Virox's previous applications for that very reason. The plaintiff plausibly alleges materiality and fraudulent intent by asserting that Pilon made the false disclaimer to improperly secure registration of REJUVenate, and that the registration would not have been issued without such a statement.

C.

The defendants' argument that the fraudulent procurement claim does not meet Rule 9(b)'s particularity requirement lacks merit. For Life Products has alleged (1) the identities of the specific individuals acting on behalf of Virox who misrepresented the scope of Virox's products (Dolly Kao and Randy Pilon); (2) the place of the misrepresentations (the USPTO); (3) the dates of when those misrepresentations were made to the USPTO during prosecution (e.g., October 23, 2017, October 24, 2017, and October 26, 2018); (4) the contents of the misrepresentations (misrepresentation of the goods that would be used in connection with the mark, and whether REJUVenate would be confused with similar marks); (5) that Virox knowingly made these misrepresentations to obtain its REJUVenate registration; and (6) that the USPTO relied on the misrepresentations to allow registration of the Rejuvenate mark. The particularized allegations in the First

Amended Complaint put the defendants on notice of the claims against them, and allowed them to prepare a defense at trial. For Life Products has also provided the defendants with a voluminous record of prediscovery evidence regarding its claims, attached as exhibits to the First Amended Complaint. This is enough to comply with Rule 9(b).

IV.

The defendants have also moved to dismiss Count VI of the First Amended Complaint which seeks to cancel REJUVenate because it is merely descriptive. "[O]nly distinctive marks garner the protection of trademark law." *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 743 F. App'x 457, 464 (D.C. Cir. 2018) (unpublished). "[T]he function of a trade-mark is to point distinctively, either by its own meaning or by association, to the origin or ownership of the wares to which it is applied." *Estate of P.D. Beckwith, Inc. v. Comm'r of Patents*, 252 U.S. 538, 543 (1920). Thus, "[t]he requirement of distinctiveness is fundamental to the nature of a trademark." Restatement (Third) of Unfair Competition § 13, Rep.'s note cmt. a (1995).

The Fourth Circuit has analyzed distinctiveness in terms of a spectrum reflecting four categories of marks which garner different protection: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 369 (4th Cir. 1999). A descriptive mark

"describes a characteristic of a product." *Id.*; *see W.E. Bassett Co. v. Revlon, Inc.*, 354 F.2d 868 (2d Cir.1966) ("Trim" for manicuring implements). A mark in this category "can only be protected if it has acquired secondary meaning" the marketplace (Ashley Furniture Indus., Inc., 187 F.3d at 369), whereby consumers "understand[ ] that the mark, when used in context, refers, not to what the descriptive word ordinarily describes, but to the particular business that the mark is meant to identify." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 125 (4th Cir. 1990). The party challenging the validity of a registered trademark has the burden to show that it is invalid. *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1529 (4th Cir. 1984).

Here, For Life Products has alleged that REJUVnate merely describes the function of Virox's products, and that the mark has appropriated the secondary meaning of For Life Products' senior mark without establishing any independent meaning of its own. The defendants retort that REJUVenate does not describe the function of Virox's products, because "a disinfecting product does not rejuvenate anything -- its function, purpose, and use is to kill germs." Mem. Supp. Mot. Dismiss 15, ECF No. 62-1.

Determining the appropriate categorization for REJUVenate and whether it has attained secondary meaning are factual questions. It would be inappropriate to determine these issues at the motion to dismiss stage. *Field of Screams, LLC v.*

*Olney Boys & Girls Cmty. Sports Ass'n*, No. DKC 10-0327, 2011 WL 890501, at *6 (D. Md. Mar. 14, 2011) (collecting cases); *see also Dayton Progress Corp. v. Lane Punch Corp.*, 917 F.2d 836, 839 (4th Cir. 1990) (A "district court's finding as to the category in which a mark belongs is reviewed under the clearly erroneous standard."). In this case, I must accept as true For Life Products' allegations that REJUVenate simply describes the function of Virox's products, and unlike For Life Products' mark, has not acquired a secondary meaning in the market. These allegations are enough to survive a motion to dismiss.

V.

For the foregoing reasons, it is **ORDERED** that the defendants' Motion to Dismiss Counts V and VI of the First Amended Complaint, ECF No. 49, is DENIED.

ENTER: July 14, 2021

/s/ JAMES P. JONES
United States District Judge