## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **FOR LIFE PRODUCTS, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:20CV00016 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **VIROX TECHNOLOGIES INC., ET AL.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |

*Craig S. Krummen and Timothy C. Bass, GREENBERG TRAURIG, P.A., Minneapolis, Minnesota, and Tucker A. Chambers, GREENBERG TRAURIG, P.A., McLean, Virginia, for Plaintiff and Counter Defendants; Geoffrey M. Bohn, BOHN & BATTEY, PLC, Arlington, Virginia, Shawn R. Farmer, MUSKIN & FARMER, LLC, Lansdale, Pennsylvania, and Lucy J. Wheatley, MCGUIREWOODS LLP, Richmond, Virginia, for Defendants and Counter Plaintiff.*

The defendants in this trademark infringement case have moved for sanctions based on fabricated evidence submitted in support of an amended complaint filed by the plaintiff. Based on supporting expert opinion, the defendants contend that the amended complaint contained false photoshopped exhibits of the plaintiff's earlier products, as well as other misrepresentations, in an effort to show that it had senior rights to the trademark. Based on my consideration of the extensive record, the plaintiff's response, and following a hearing, I will grant the motion for sanctions. Because of the breathtaking nature and extent of the misrepresentations, and their

potential effect on the litigation and the administration of justice, I will dismiss the plaintiff's action with prejudice as a sanction and award attorneys' fees and costs.

## I.   BACKGROUND.

At issue is the First Amended Complaint filed September 30, 2020, on behalf of the plaintiff, For Life Products, LLC ("FLP"), by its former counsel.  The First Amended Complaint alleged various trademark and unfair competition claims, including fraudulent procurement of a trademark and cancelation of a descriptive trademark, against the defendants Virox Technologies, Inc. ("Virox") and Universal Companies, Inc.[1]

FLP asserted that the defendants use the trademark "REJUVenate" for disinfectants that infringes on FLP's "REJUVENATE" trademark for cleaning, restoration, and surface care products.[2]  On August 6, 2021, FLP's then-counsel filed a motion to withdraw, advising that the plaintiff would be thereafter represented by present counsel.  The magistrate judge granted the motion on August 9, 2021.  By email sent October 26, 2021, FLP's new counsel advised defendants' counsel that

---

[1]  Virox has also asserted a Counterclaim against FLP and against other parties, Biojam, LLC, and Ruggiero Innovations LLC, that it contends are alter egos of FLP.  The Counterclaim is not involved in the present issue.

[2]  The parties refer to Virox's registered trademark as "REJUVENATE."  Pl.'s First Am. Compl. ¶ 4, ECF No. 49; Defs.' Answer Pl.'s First Am. Compl. ¶ 201, ECF No. 111. However, Virox's federal trademark registration identifies the mark as "REJUVenate." Defs.' Answer Pl.'s First Am. Compl. Ex. B, ECF No. 111-14. To distinguish between the competing marks, I will refer to FLP's marks as "REJUVENATE" and Virox's mark as "REJUVenate."

FLP intended to file a Second Amended Complaint and inquired if it could be filed by agreement.  Mot. File Second Am. Compl. Ex. A, ECF No. 131-2.  Counsel included with the email a red-lined comparison of the proposed Second Amended Complaint with the First Amended Complaint.  *Id.* at Ex. B, ECF No. 131-3.  The defendants' counsel did not respond to the email, but on November 1, 2021, filed the present Motion for Sanctions, accusing FLP of fabricating evidence.   In particular, it is claimed that FLP intentionally fabricated and falsely represented five exhibits to the First Amended Complaint.  Those exhibits consist of FLP's product catalogs for the years 2016 through 2020 as well as an image of Amazon.com. advertising an FLP product with dated customer reviews.  They request that the court impose sanctions, including dismissal of the plaintiff's action with prejudice and cancelation of four of FLP's federally registered trademarks.  A week later, on November 8, 2021, FLP moved for leave to file a Second Amended Complaint, which if granted would remove the disputed exhibits and reduce the number of trademarks allegedly infringed.

Following briefing, the two motions were the subject of a hearing on January 7, 2022.  At the hearing, I inquired of counsel for all parties as to whether they desired to submit any further evidence beside that included in the documents submitted with their briefs, to which negative answers were given.  I also asked the plaintiff's attorney if he wished to question any of the defendants' witnesses, all of

whom were available for the hearing.  He affirmed that FLP was "comfortable going forward without cross-examining" any of the defendant's witnesses, with the stipulation agreed to by defense counsel that defendants' expert Richard Quindry "didn't speak with anybody" at FLP, including its current or past employees, in the preparation of his report.  Mot. Hr'g Tr. 11, 12, ECF No. 157.  It was thus agreed by the parties that the court could decide the motions based on the existing record, including previously filed declarations of witnesses and exhibits, without further depositions, evidence, or testimony, subject to the understanding that (1) the defendants' expert Quindry did not discuss the matter with any employee or agent of FLP, current or former, in arriving at his findings and conclusions, and (2) any legal conclusions that may be contained in expert Quindry's declaration are matters solely for determination by the Court.  *See United States v. Poulin*, 461 F. App'x 272, 282 (4th Cir. 2012) (unpublished) ("Generally, a witness may not give opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts").[3]

## II.  FACTUAL DETERMINATIONS.

The court's factual determination surrounding this dispute are as follows.

---

[3]  I have omitted internal quotation marks, citations, and alterations, throughout this opinion unless otherwise noted.

On April 13, 2020, FLP filed the original Complaint in this action, alleging various trademark and unfair competition claims related to its REJUVENATE-branded products.  FLP has sold a wide array of consumer household cleaning and polishing products under its family of REJUVENATE trademarks since 1999, expanding its product line over the past two decades from a single floor restoration product to nearly 70 "commercial and residential products ranging from surface cleaning and renewal products to cabinet and furniture restorers to leather and fabric cleaners to spot and stain removers."  Compl. ¶ 18, ECF No. 1.  FLP claimed that it owns six "incontestable" trademark registrations for REJUVENATE-branded cleaning products:  REJUVENATE, REJUVENATE DEEP CLEAN!, REJUVENATE REFRESHER, REJUVENATE, REJUVENATE MEGACLEAN, and REJUVENATE VERSA CLEAN.  *Id.* ¶ 19.

The defendants sell all-purpose disinfectants under their REJUVenate trademark.  Their products are sold exclusively to wellness and beauty professionals and businesses, whereas FLP primarily sells to individual consumers.  As COVID-19 cases spiked in 2020, the demand for surface cleaners and disinfectants skyrocketed.  Empty store shelves quickly became a defining image of those early pandemic days.  It was and continues to be a lucrative time to sell surface cleaners and disinfectants.   The rights to market REJUVENATE-branded antibacterial cleaner and disinfectants is thus an ultimate issue in this case.

After FLP filed its original Complaint, one of the defendants, Virox, responded by asserting four counterclaims against FLP. Specifically, it alleges that FLP's sale of disinfectant and hand sanitizer products infringes on their federal trademark registration for REJUVenate "all-purpose disinfectants for infection control and prevention, and biosecurity," which they have owned since 2018. Defs.' Answer & Countercl. ¶ 159, ECF No. 15; *id.* at Ex. B, ECF No. 15-2; *see also* Defs.' Answer Pl.'s First Am. Compl. Ex. B, ECF No. 111-14.

In response, FLP moved to amend the Complaint. Attached to the First Amended Complaint were copies of FLP's product catalogs from 2016, 2017, 2018, 2019, and 2020. Pl.'s First Am. Compl. Exs. 2–6, ECF No. 49-2, 49-3, 49-4, 49-5, 49-6. The product catalogs purportedly contained all products available for sale and distribution in a given year. FLP specifically alleged that it had continuously sold REJUVENATE Antibacterial Floor Cleaner since as early as 2016. This product was listed in every catalog, including in a five-gallon bucket quantity. FLP also attached an Amazon.com image, which it claimed showed customer reviews for Antibacterial Floor Cleaner from March 2017 to January 2019. *Id.* at Ex. 7, ECF No. 49-7. FLP emphasized its sales of REJUVENATE-branded cleaning products include "antibacterial cleaners that disinfect surfaces," specifically, Antibacterial Floor Cleaner. *Id.* ¶ 25, ECF No. 49.

The defendants assert that each of the exhibits described above attached to the First Amended Complaint was fabricated and that FLP relied on these falsified documents to misrepresent its prior years' sales of disinfectant products and thus to bolster its claim of infringement.

### A. 2016–2020 Product Catalogs.

At some point after FLP filed its First Amended Complaint, the defendants became suspicious about what they perceived as a lack of support for FLP's disinfectant-sales claims. They hired a forensic photographic expert, Rich Quindry, to analyze the First Amended Complaint's product catalogs and the Amazon.com image. Quindry specializes in digitally enhanced photography. He is often hired as an expert to analyze the authenticity and reliability of images. The defendants also hired an expert in regulatory matters involving the U.S. Environmental Protection Agency ("EPA"), Michael S. Wenk, to analyze the Antibacterial Floor Cleaner's label from the product catalogs.

Quindry analyzed the product catalogs filed with the First Amended Complaint ("exhibit catalogs"), and then compared them to the product catalogs produced in discovery ("discovery catalogs"). In his report, Quindry concluded that there were numerous alterations throughout the exhibit catalogs, including differences in typestyle font and color, thickness of photo borders, label designs, and the sharpness and quality of images. He also found several discrepancies between

product bottles and their reflections.  He determined these errors were evidence that the catalogs had been doctored.

For instance, in the 2018 exhibit catalog, the label for "Marble, Granite and Stone Floor Cleaner," which has a purple vertical label, was replaced with the label for the Antibacterial Floor Cleaner, which has a red horizontal label.  FLP had failed to change the reflection of the product mirrored below, which showed the purple, vertical-styled original label and the original label's text still faintly visible.  He compared the 2018 discovery catalog to the 2018 exhibit catalog and concluded it was identical, except that the Antibacterial Floor Cleaner was absent from the 2018 discovery catalog.

Quindry found similar errors in the 2019 exhibit catalog.  He identified where the label for "Luxury Vinyl Floor Cleaner" had been replaced with the label for the Antibacterial Floor Cleaner.  Again, FLP failed to change the reflection.  The mirror-image label was clearly the original product with the original text; the color also did not match.  Just as with the 2018 catalogs, the 2019 discovery catalog was identical to the 2019 exhibit catalog, except that Antibacterial Floor Cleaner was absent from the 2019 discovery catalog.

In total, Quindry found nearly 30 images had been altered in some fashion, all relating to one product: the Antibacterial Floor Cleaner.  Based on his experience, Quindry concluded such changes could not have occurred "through mere

carelessness." Defs.' Mem. Supp. Mot. Sanctions Ex. A, Quindry Op. 13, ECF No. 123-2. FLP does not dispute Quindry's expert qualifications to make these findings.

Additional record evidence proves that the exhibit catalogs were fabricated. Expert witness Wenk analyzed the product label for Antibacterial Floor Cleaner as shown in each of the exhibit catalogs. He determined that the label could not have existed prior to August 2020, at the earliest. As he explained, FLP's Antibacterial Floor Cleaner label contained three important numbers: (1) the EPA registration number for REJUVENATE Antibacterial Floor Cleaner (No. 1839-220-86576); (2) the EPA establishment number for Mill-Chem Manufacturing, Inc. ("Mill-Chem") (No. 63942-NC-001); and (3) the EPA establishment number for Goodwin Company ("Goodwin") (No. 408730GA-001). Mill-Chem and Goodwin are formulators of Antibacterial Floor Cleaner for FLP.[4]

In a declaration, Goodwin's CEO attested that his company did not produce or distribute any REJUVENATE Antibacterial Floor Cleaner prior to August 13, 2020. Wenk further reviewed Goodwin's EPA records and confirmed that Goodwin did not "produce, repackage, relabel, sell, or distribute any of FLP's referenced REJUVENATE Antibacterial Floor Cleaner during the years of 2014 through 2020."

---

[4] Any person selling, using, or distributing a pesticide, including disinfectants, must register the product with the EPA. 7 U.S.C. §§ 136(mm)(1)(A)(i), 136a(a). All disinfectants must have on the product label the "product registration number" and the "producing establishment number." 40 C.F.R. § 156.10(a)(1)(iv)–(v).

Defs.' Reply Supp. Mot. Ex. 1, Wenk Aff. ¶ 16, ECF No. 144-1.  He concluded that any label with Goodwin's EPA establishment number would date to 2021.  *Id.* ¶ 20.  This timeline is consistent with FLP's internal documents, which revealed that FLP did not approve a new label with Goodwin's EPA establishment number until August 14, 2020.

The earliest a label with all three EPA numbers could have existed then is late 2020.  In other words, the label could not have appeared in the 2016, 2017, 2018, or 2019 product catalogs.  It is theoretically possible that the label could have appeared in the 2020 product catalog if the catalogs had been printed and distributed sometime after August 2020.  However, FLP has not provided any evidence that would support this possibility.  FLP does not challenge Wenk's expert qualifications.

## B. Amazon.com Image.

The First Amended Complaint contained an exhibit purporting to be screenshots of a multipage Amazon.com webpage advertising FLP's Antibacterial Floor Cleaner.  First Am. Compl. Ex.7, ECF No. 49-7.   It was alleged by FLP that the screenshots "include customer reviews from customers that purchased FLP's REJUVENATE Antibacterial Floor Cleaner spanning from March 2017 to January 2019," First Am. Compl. ¶ 29, ECF No. 49, and the image does show such reviews.

Quindry analyzed the image.  He found that the exhibit was not screenshots of an Amazon.com webpage, as FLP represented, but was instead a PDF (Portable

Document Format) image from Amazon.in (India).  He found that the Indian flag had been erased from the search bar and the domain suffix was altered from ".in" (India) to ".com" (United States).  In his opinion, Quindry concluded that it was a "mistake which [he] cannot conceive of having happened accidentally."  Quindry Op. 21, ECF No. 123-2.

### C. Plaintiff's Misleading Explanations.

Given the seriousness of the allegations, one might expect FLP to offer a full-throated rebuttal, or at least put forth some plausible explanation for its actions, but that is not the case.  FLP does not dispute any of these facts.  At the hearing, FLP's counsel insisted that the declaration of FLP's President, Robert Baylis, provided an adequate explanation.  But Baylis' declaration is hardly sufficient.  Baylis explains only that FLP has historically generated multiple "pitch" catalogs, and catalogs designated for specific trade shows, and that prior counsel inadvertently used the wrong catalogs in the First Amended Complaint.  This explanation, of course, contradicts FLP's earlier representations to the defendants and this court that the product catalogs contained *all* FLP's products made available in a given year.  More importantly, FLP has not provided any independent supporting evidence that would corroborate this pitch-catalog theory.

For instance, FLP did not produce in discovery copies of so-called pitch catalogs or catalogs that appeared to be designated for certain tradeshows.  As noted

above, there are only two sets of annual catalogs in all of FLP's document production: exhibit catalogs and discovery catalogs, which are identical in every respect except for the fabrications. There is also no documentation of any internal discussions about pitch catalogs. If this pitch catalog theory were true, there should be at least some supportive documentation. The lack of corroboration casts significant doubt on the truthfulness of Baylis' declaration.

The little evidence that FLP does provide only exposes the extent of its wrongdoing even further. Baylis provided copies of invoices and 2016–2020 Sales Inventory Analysis Reports. The documents show sales of Antibacterial Floor Cleaner during this time period,[5] but absent is evidence of sales in larger containers, as advertised in the exhibit catalogs, including five-gallon buckets of Antibacterial Floor Cleaner. A reasonable inference is that FLP doctored the catalogs to make it appear as though it were selling a product that it was not selling. FLP makes no effort to explain or dispute this fact.

---

[5] The defendants claim the 2019 Inventory Sales Analysis report shows no sales of Antibacterial Floor Cleaner, and that Mill Chem's records show that it did not manufacture the product in 2018 or 2019. FLP's claim of continuous sales since 2016 is thus "another falsehood by FLP and its counsel." Defs.' Reply Supp. Mot. 9, ECF No. 144. FLP claims, however, that its 2019 sales appeared in its 2020 Inventory Sales Analysis report. Because parts of that report have been redacted, I am unable to verify FLP's claim. I do not find it necessary to resolve this issue, as other record evidence is sufficient.

Perhaps FLP does not think that it has to offer an excuse, that it can simply move on with counsel's obvious concession that "mistakes were made." Mot. Hr'g Tr. 70, ECF No. 157. But despite every opportunity to come clean, FLP has repeatedly refused to provide a straight-forward explanation for how such mistakes occurred, if that is all that they were. FLP continued insistence that the court can rely on Baylis' unsubstantiated declaration simply makes no sense. Baylis does not shed light on this issue. Worse, he completely ignores the damning labeling evidence or the Amazon.com fabrication. And at the hearing, counsel made no effort to account for the records' shortcomings by offering more of an explanation.[6]

---

[6] When questioned about the Amazon.com screenshot, plaintiff's present counsel responded as follows:

Court: Is there any explanation why the tampered-with Indian Amazon screenshot was included?

[FLP Attorney]: Your honor, we do not understand why that was included. We respectfully disagree in terms of it being tampered. What we know is it was "IN." And I don't think that the person involved appreciated what "IN" meant.

Court: There's evidence the Indian flag was removed.

[FLP Attorney]: Your Honor, I'm not aware of how that happened and what the allegation means.

Mot. Hr'g Tr. 75–76, ECF No. 157.

D. FLP's Pattern of Misconduct.

Unfortunately, the plaintiff's litigation misconduct does not appear to be an isolated incident.  Rather, it is consistent with a pattern of fraudulent and misleading behavior that has been demonstrated throughout the litigation.

i.   *Hand Sanitizer Sales.*

First, FLP has repeatedly claimed that it "sells and distributes, among other things, a wide array of household and commercial cleaning, restoration and surface care products under the FLP REJUVENATE Marks, including . . . hand sanitizer." Compl. ¶ 17, ECF No. 1; Pl.'s First Am. Compl. ¶ 18, ECF No. 49.  By email sent on May 6, 2021, FLP represented to defense counsel that it has sold hand sanitizer since "as early as 2009."  Defs.' Mem. Supp. Mot. Sanctions 14, ECF No. 123-1; *id.* at Ex. G, ECF No. 123-19.  FLP reiterated this again in its response to the defendants' sanctions' motion: FLP "sold its REJUVENATE hand sanitizer products *as early as* 2009."  Pl.'s Mem. Opp'n Mot. Sanctions 7, ECF No. 137 (emphasis added).

But FLP's claim of hand-sanitizer sales in April 2020 is not supported by any evidence, and subsequent claims about 2009 sales are seriously misleading.  To be sure, FLP did produce invoices showing sales in 2009, as well as a photo of hand sanitizer with a 2011 expiration date.  However, the Food and Drug Administration ("FDA") has no record of REJUVENATE-branded hand sanitizer sales in 2009, or before 2020.  The only references REJUVENATE-branded sanitizer in the FDA's

databases relate to products with a start-marketing date of June 1, 2020. Both the original and amended complaints nevertheless speak in the present tense, meaning that FLP was selling and distributing hand sanitizer *at the time* of filing on April 13, 2020. FLP has not shown evidence of sales from 2010 to April 13, 2020, that would have supported its claim. Any claims about 2009 sales should also have included a caveat that they were made without FDA approval. [7]

### ii. *Trademark Registrations.*

FLP alleged that it sells a broad array of products of its family of REJUVENATE trademarks, including: (1) REJUVENATE DEEP CLEAN!; (2) REJUVENATE REFRESHER; (3) REJUVENATE MEGACLEAN; and (4) REJUVENATE VERSA CLEAN. Based on public records and the plaintiff's sales reports, it appears FLP was not selling any products under these four marks either when it filed the Complaint, or when it filed to renew the marks with the U.S. Patent and Trademark Office ("USPTO").

First, FLP claimed proof of sales of two REJUVENATE DEEP CLEAN! products: REJUVENATE 24-ounce Deep Clean TI and REJUVENATE 32-ounce Deep Clean Gro. Neither product appeared in the exhibit catalogs or the discovery

---

[7] The defendants argue any REJUVENATE-branded hand sanitizer sales in 2009 would have been unlawful, as FLP did not properly register with the FDA, and by the time FLP filed its complaint, any common law rights had long been abandoned. Therefore, they claim that FLP's assertions are entirely without merit.

catalogs.  The inventory codes also correspond to products that do not have the DEEP CLEAN! trademark.  Worse still, the inventory code for the 24-ounce Deep Clean TI is "RJ23DC FREN." "FREN" is the language code for French products, which indicates that this product was not sold in the United States.  Defs.' Reply Ex. 4, Rosendahl Decl. ¶ 31, ECF No. 144-2; *id.* at Ex. II, ECF No. 144-39.

In 2015 and in 2019, FLP submitted facially false specimens to the USPTO in order to renew its REJUVENATE REFRESHER trademark.  FLP claimed the specimen was a REFRESHER-branded product, but the actual product submitted was branded "REJUVENATE SHINE REFRESHER."  FLP's internal reports show sales of SHINE REFRESHER-branded products during this time period, and on September 8, 2021, FLP filed a new trademark application for REJUVENATE SHINE REFRESHER that is nearly identical to its 2015 and 2019 renewal applications for REJUVENATE REFRESHER.  A reasonable inference is that FLP was selling the product under the wrong trademark registration.

Third, there are no products listed in the exhibit or discovery product catalogs, website, sales invoices, or inventory sales analysis reports with the REJUVENATE MEGACLEAN or REJUVENATE VERSACLEAN trademarks.  FLP filed specimens for these trademarks during this time period, but the products' inventory code on the label corresponds to entirely different products: REJUVENATE OUTRAGEOUS and REJUVENATE CLICK AND CLEAN.  FLP only recently

filed trademark applications for both REJUVENATE OUTRAGEOUS and REJUVENATE CLICK AND CLEAN.

Finally, FLP appears to have filed for trademark applications for hand sanitizer and antibacterial floor cleaner after the original complaint was filed. There is a good faith explanation for this: FLP recognized that moving forward, it would have a better chance of defending its trademarks if they were registered with the USPTO, instead of relying on common law protection. On the other hand, another reasonable inference is that FLP realized it did not have *any* valid ownership claim to disinfectants, like hand sanitizer, under the REJUVENATE mark, which it needed to rectify.

The defendants' claim that FLP submitted fraudulent specimens to the USPTO is not alleged as a counterclaim in this action. FLP argues it is therefore irrelevant to this litigation and the present motion. However, I believe that it shows a troubling pattern of behavior. The plaintiff's conduct towards the USPTO make it all the more plausible that it would do anything to prevail in litigation, no matter the costs.

### iii. FLP's Reasons for Amending the Complaint.

Finally, if given the opportunity, FLP would have scrubbed the record with the Second Amended Complaint and never disclosed to the defendants, or this court, the "mistake" that had occurred. But it was caught. The plaintiff's counsel now

- 17 -

makes the assertion that FLP was the one who "found these discrepancies and []
brought it to [the defendants'] attention through the second amended complaint."
Mot. Hr'g Tr. 61, ECF No. 157. However, the record shows that counsel never
provided the reason why FLP needed to amend the Complaint nor did counsel notify
opposing counsel about the false exhibits.

What motivated FLP to fabricate the documents?  To prevail on a federal
trademark infringement or unfair competition claim, FLP must show that it owns a
valid mark and that an imitating mark, used in commerce, is likely to confuse
consumers.  15 U.S.C. §§ 1114, 1125(a); *Choice Hotels Int'l, Inc. v. Royal Touch
Hosp., LLC (NC)*, 409 F. Supp. 3d 559, 564–65, 568 (W.D. Va. 2019). "The test for
trademark infringement and unfair competition under the Lanham Act is essentially
the same as that for common law unfair competition under Virginia law." *Lone Star
Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 n.10 (4th Cir.
1995).

As to the first prong, federal registration of a trademark is "*prima facie*
evidence that the registrant is the owner of the mark." *George & Co. v. Imagination
Ent. Ltd.*, 575 F.3d 383, 400 n.15 (4th Cir. 2009).  Alternatively, at common law,
trademark ownership can flow from prior use, provided the plaintiff shows "actual
use of the mark in a given market." *Emergency One, Inc. v. Am. Fire Eagle Engine
Co.*, 332 F.3d 264, 267 (4th Cir. 2003).

As to the second prong, a likelihood of confusion is based on the defendant's actual use of the mark in the marketplace. *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006). A trademark owner does not have to show that the defendant's confusing use involves the exact same goods or services, only sufficiently similar ones. *Dynamic Aviation Grp. Inc. v. Dynamic Int'l Airways, LLC*, No. 5:15CV00058, 2016 WL 1247220, at *16 n.10 (W.D. Va. Mar. 24, 2016). A trademark registration is also "broadly construed, and the appropriate reading is not limited to the text of the mark's registered purpose." *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 173 (4th Cir. 2006).

FLP's theory of the case appears simple: because FLP has sold a broad array of household cleaning and restoration products under its REJUVENATE mark, it holds senior rights to all REJUVENATE surface cleaners, which would include antibacterial disinfectants. This is true even though FLP's registered trademarks do not describe disinfectant uses, and even though the majority of the products sold under the REJUVENATE mark are ordinary surface cleaners, furniture polishes, or floor polishes. To bolster the argument that its products are sufficiently similar to the defendants' products, FLP relies heavily on Antibacterial Floor Cleaner sales. The timeframe of those sales is critical not only to prevail on its own claims but also to defeat the defendants' counterclaims. Because unlike Virox, FLP does not own a

federal registration in disinfectants, it must show pre-2018 sales of a sufficiently similar antibacterial product.

This is why the fabricated product catalogs were so essential to FLP's claims since they showed sales of Antibacterial Floor Cleaner since at least 2016. The catalogs also showed sales of a five-gallon bucket quantity, which is an amount typically sold to business customers, and not to individuals. This would counter any potential argument that the defendants' differing target market for its antibacterial products eliminates customer confusion with FLP's products. The Amazon.com image also showed sales and customer reviews as early as 2017. Finally, the number of trademark registrations further reinforced FLP's baseline assertion that it is the senior user of the REJUVENATE mark on a broad array of products.

In sum, FLP had every reason to misrepresent the scope of its pre-2018 sales of sufficiently similar cleaning products, such as the Antibacterial Floor Cleaner and hand sanitizer. This was achieved by submitting fabricated product catalogs and an Amazon.com image, relying on numerous fraudulently obtained trademark registrations, and making misleading comments about its hand sanitizer sales. As the defendants contend, it is a reasonable supposition that FLP was concerned because it could not otherwise prove that it sold any disinfectant products in the years leading to the pandemic.

The defendants suggest that FLP had yet another reason to fabricate evidence. In April 2021, it was being acquired by a larger enterprise. Holding broad rights in REJUVENATE-branded products would likely increase FLP's marketability and price.

## III. ANALYSIS.

A federal court has the inherent power to impose sanctions for a wide range of litigation misconduct beyond what is conferred by statute or by rule. *Chambers v. NASCO Inc.*, 501 U.S. 32, 50–51 (1991). It may impose the most severe sanction — dismissal with prejudice — where a party "deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993). The fabrication of evidence is a "near-classic example" of an abuse on the judicial process. *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989). The Fourth Circuit, "[m]indful of the strong public policy that cases be decided on the merits," has set forth six factors for consideration, holding:

> [B]efore exercising the inherent power to dismiss a case, a court must consider the following factors: (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and

deterring similar conduct in the future; and (6) the public interest.

*Shaffer*, 11 F.3d at 462–63.

The Fourth Circuit has not determined the precise burden of proof in a motion for sanctions. Nevertheless, as other district courts have held, proving that severe misconduct occurred by clear and convincing evidence, as opposed to preponderance of the evidence, is preferred. *Suntrust Mortg., Inc. v. AIG United Guar. Corp.*, No. 3:09CV529, 2011 WL 1225989, at \*20 (E.D. Va. Mar. 29, 2011), *aff'd* 508 F. App'x 243 (4th Cir. 2013) (unpublished). Under either standard, the outcome of this motion would be the same.

### A.  Degree of Culpability.

The first *Shaffer* factor I am to consider is the degree of FLP's culpability. The essential inquiry is whether the party has acted in bad faith — that is, acted knowingly with the intent to gain an advantage in the litigation. *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 593 (4th Cir. 2001). In conclusory fashion, FLP claims that dismissal is not warranted because it did not act in bad faith. The record does not support that conclusion. To the contrary, the plaintiff has repeatedly demonstrated its bad faith in this case.

As recounted above, the evidentiary record convincingly establishes that FLP fabricated the 2016–2020 product catalogs and Amazon.com image. Indeed, it is *undisputed* that the product catalogs contained nearly thirty fabricated images and

that FLP inexplicably doctored the Amazon.com image to remove all references to Amazon India.

The only real dispute is FLP's intent.  Here again, the record evidence convincingly points to bad faith.  When confronted by the evidence of its own misconduct, FLP never owned up to its mistake.  Rather, FLP continued to mislead this court.  The defendants' experts discredit FLP's pitch-catalog or inadvertent mistake excuse.  The recent timing and the fabrications' focus — involving only the Antibacterial Floor Cleaner with a recently created label — further underscores that FLP's actions were not just purposeful but clearly tailored to gain a litigation advantage.  The label was not approved until late 2020 — only one month before FLP filed the First Amended Complaint — and yet, it appears in every catalog year. The reasonable inference then is that FLP altered the catalogs in response to defendants' answers and counterclaims.  Given that the falsehoods all pertain to key liability aspects of this case, it is not believable that they occurred accidentally.

FLP's attempted explanation of the fabrications and proposed amendments to the complaint are added proof of bad faith, and a general lack of appreciation for the seriousness of the misconduct.  FLP's claim that prior counsel just mistakenly filed the wrong pitch catalogs, when no single piece of evidence supports this theory, is but another attempt to mislead this court.  Perhaps in recognition that it has run out of plausible theories, FLP now claims that the catalogs are merely a "side-show,"

and irrelevant, as other record evidence proves continuous sales of Antibacterial Floor Cleaner.  These claims are not only inconsistent with the entirety of the record but are an obvious attempt to distract this court from the allegations' seriousness.  If the catalogs were so unimportant, FLP would not have relied on them, certainly not to *strengthen* its original complaint.  That other evidence supports its claims also cannot undo the fact that FLP submitted fabricated evidence.

FLP argues that it should be lauded for bringing the issues to the defendants' attention.  In reality, however, FLP sent a red-lined version of the proposed Second Amended Complaint to opposing counsel without any explanation of why an amendment was necessary.

On this record, there is no doubt that FLP willfully fabricated evidence.  This factor therefore cuts in favor of dismissal.

### B.  Client's Blameworthiness.

The second *Shaffer* factor that I must consider is the degree to which the client was at fault, or whether the litigation misconduct was perpetrated by its attorneys.  This factor also cuts in favor of dismissal.  It is not contended that FLP's former attorneys are responsible for creating the fabricated evidence.  All-in-all, it is apparent that the fault lies solely with FLP.

- 24 -

C.  Prejudice to the Judicial Process and the Victim.

The third and fourth *Shaffer* factors I must consider are the prejudice to the judicial process and to the victim.  These factors also favor dismissal.  "[F]alsifying evidence to secure a court victory undermines the most basic foundations of our judicial system."  *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 402 (7th Cir. 2015).  It is difficult to imagine a greater prejudice to the judicial system than the fabrication of evidence.  *See Pope v. Fed. Express Corp.*, 138 F.R.D. 675, 683 (W.D. Mo. 1990), *vacated in part on other grounds*, 974 F.2d 982 (8th Cir. 1992).

Infecting the pleadings with fraud has undoubtedly impacted the course of this lawsuit in inherently unknowable ways.  FLP's argument that there can be no prejudice because it has withdrawn the exhibits is not persuasive.  In any event, it is not just the submission of fabricated evidence.  FLP's serious and repeated instances of misconduct and obfuscation clearly demonstrate that it has no regard for the court's authority.  FLP's actions have already required the court to expend more time and resources on this case, diverting attention from other matters.

The defendants are also prejudiced.  "Where, as here, the deceit relates to the merits of the controversy, the harm to the defendant should be presumed because it is intrinsic to our truthfinding adversary system and, therefore intangible and immeasurable."  *Tesar v. Potter*, No. 9:05-00956-SB, 2007 WL 2783386, at *17 (D.S.C. Sept. 21, 2007).  FLP has lied about material events in this case, including

its number of valid trademarks and sales of the five-gallon sized quantity of Antibacterial Floor Cleaner.  FLP does offer presumably untainted evidence to prove sales of the product in the form of sales analysis records and invoices, assuming such records are valid.  But the defendants rightfully point out that they have every reason to distrust the remaining evidence produced by FLP in this matter, and moving forward, they will incur the added cost and burden of verifying the authenticity of every document.

FLP relied upon the fabrications to increase settlement pressure, as the company falsely represented and seriously misled the defendants about its prior hand sanitizer sales.   While those negotiations were ultimately unsuccessful, they certainly detracted from other litigation issues and overestimated the defendants' liability in this case.

D.  Availability of Other Sanctions and the Public Interest.

Under the fifth and sixth *Shaffer* factors, I must consider whether a lesser sanction would be sufficient to deter future misconduct and if the level of misconduct is so severe that it is in the public interest to require the defrauding party to "forfeit its claims." *Suntrust Mortg., Inc.*, 2011 WL 1225989, at *27.

FLP has not suggested any alternative sanctions that the court may impose. FLP argues only that dismissal would be too severe in the absence of bad faith.  FLP also maintains that it still has meritorious claims, despite its use of fabricated

evidence, and that the Second Amended Complaint moots the issue by the contested exhibits and trademarks.  In other words, its conduct cannot be sanctionable because it has eliminated all of the sanctionable material.

This argument misses the point.  The real issue of concern is that in earlier pleadings, FLP had filed false, material misrepresentations with this court.  FLP's subsequent attempts to remove the fabrication are irrelevant to whether its past conduct is sanctionable.  Instead, the reasonable inference is that FLP, without remorse or admission of fault, believes that it is entitled to continue litigating this case simply because it removed the evidence after being caught.

I have considered whether imposing only lesser sanctions, such as shifting costs and attorneys' fees, would be sufficient.  Other courts have considered striking the fabricated evidence from the record or providing a limiting instruction to the jury.  *Shaffer Equip. Co.*, 11 F.3d at 463.  I find that such alternatives would be inadequate in this case.  Striking the fabricated exhibits would hardly be a punishment, as FLP seeks to withdraw them from the Second Amended Complaint.  It is also unclear what sort of limiting instruction would be applicable on these facts.

Regardless, I find that the gravity and extent of the misconduct demonstrated in this case demands the severe sanction of dismissal with prejudice.  "Our adversary system for the resolution of disputes rests on the unshakable foundation that truth is the object of the system's process," and "[e]ven the slightest accommodation of

deceit or lack of candor in any material respect quickly erodes the validity of the process." *Shaffer*, 11 F.3d at 457. While the public has a strong interest in resolving disputes on the merits, "it also has a significant interest in having its cases decided on the law and facts, free of false, fabricated, or fraudulent" evidence. *Sinclair v. Mobile 360, Inc.*, No. 1:07CV17, 2011 WL 3804413, at *9 (W.D.N.C. Aug. 29, 2011). "[A] court's inherent power to dismiss a case and protect the sanctity of the judicial process is never more compelling than in a situation of individuals who engage in fraud upon the court." *Perna v. Elec. Data Sys., Corp.*, 916 F. Supp. 388, 397 (D.N.J. 1995).

FLP's malfeasance has already been recounted extensively. I believe that there was bad faith in this case, despite the plaintiff's conclusory statement to the contrary. I also find that what is, in essence, a "no harm, no foul" defense demonstrates a lack of respect for this court's authority and the judicial system. It simply cannot be the case that a litigant may manufacture evidence that is essential to its legal claims and the only consequence is that it cannot rely on that evidence at trial. Or, as in this case, face no sanction at all other than to cover the costs incurred by an opposing party to uncover its fraud. This would surely invite more litigation misconduct in the future. Other district courts confronted with similar substantial and repeated misconduct related to material evidence in the case have reached the same conclusion. *See, e.g., Sarco Creek Ranch v. Greeson*, 167 F. Supp. 3d. 835,

850–51 (S.D. Tex. 2016) (dismissal of trademark claims based on fabricated evidence); *Plastech Holding Corp. v. WM Greentech Auto. Corp.*, 257 F. Supp. 3d 867, 878–79 (E.D. Mich. 2017) (same).

The functioning of our justice system demands that litigants act with integrity and honesty. Abuse of the system distorts this court's ability to ensure fair and just outcomes and threatens the legitimacy of the entire enterprise, particularly at a time when there is a crisis of public confidence in our institutions. In sum, to ensure the integrity of the judicial process and to deter future parties from engaging in similarly egregious conduct, I find that the plaintiff's use of fabricated evidence, along with its pattern of deceptive and misleading behavior in this case, warrants dismissal of its claims with prejudice.

IV.   ADDITIONAL SANCTIONS.

Defendants also move this court to cancel FLP's four trademark registrations allegedly obtained by fraud, or in the alternative, to grant leave to file an amended counterclaim. Defendants further request attorneys' fees, expert witness fees, and costs incurred to uncover the fraud in this case.

First, as noted above, the defendants do not assert the cancelation of FLP's trademark registrations as a counterclaim. I agree that a court may cancel fraudulently obtained trademarks under its inherent sanction authority. Where such relief has been granted by other courts, however, the litigant had asserted it as a

proper claim or counterclaim. *Sarco Creek Ranch*, 167 F. Supp. 3d at 838. I will not grant such relief under the present motion.

As to the defendants' request for fees and costs, I agree that FLP's abuse of the litigation process has imposed substantial burdens on the defendants. The assessment of attorneys' fees and costs is within a court's inherent authority, particularly where the party has litigated in bad faith. *Chambers*, 501 U.S. at 45–46; *Sarco Creek Ranch*, 167 F. Supp. 3d at 851 (collecting cases). Given the breadth of litigation misconduct in this case, I find that the defendants are entitled to attorneys' fees and costs spent investigating and litigating FLP's misconduct.

## V. CONCLUSION.

For the foregoing reasons, it is **ORDERED** as follows:

1.  Defendants' Motion for Sanctions, ECF No. 123, is GRANTED;

2. Plaintiff's Amended Complaint, ECF No. 49, is DISMISSED with prejudice;

3. Defendants' request to cancel Plaintiff's trademark registrations is DENIED without prejudice;

4. Plaintiff's Motion for Leave to Amend, ECF No. 131, is DENIED as moot; and

5.  The request for an award of attorneys' fees and costs is GRANTED and

defendants must submit adequate support for the amount of such award

within 21 days of the entry of this Order.

ENTER:   May 25, 2022

/s/  JAMES P. JONES
Senior United States District Judge