# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| FOR LIFE PRODUCTS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:20CV00016 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | **AS TO FEE AWARD** |
| VIROX TECHNOLOGIES INC., ET AL., ) | |
| ) | |
| Defendants. ) | |

*Craig S. Krummen and Molly R. Littman, GREENBERG TRAURIG, LLP, Minneapolis, Minnesota, and Timothy C. Bass and Robert W. Angle, GREENBERG TRAURIG, LLP, McLean, Virginia, for Plaintiff and Counter Defendant; Lucy J. Wheatley, MCGUIRE WOODS LLP, Richmond, Virginia, Geoffrey M. Bohn, BOHN & BATTEY, PLC, Arlington, Virginia, and Shawn R. Farmer, MUSKIN & FARMER, LLC, Lansdale, Pennsylvania, for Defendants and Counter Plaintiff.*

In this trademark infringement case, I previously granted the defendants' Motion for Sanctions and dismissed the plaintiff's Amended Complaint with prejudice. *For Life Prods., LLC v. Virox Techs. Inc.*, No. 1:20CV00016, 2022 WL 1670097 (W.D. Va. May 25, 2022). I also found that the defendants were entitled to attorneys' fees and costs spent investigating and litigating the plaintiff's misconduct. The defendants' fee and costs request is now before me, having been fully briefed. For the reasons stated, I will award the defendants $405,112.33 in fee and costs, which I find to be a reasonable amount for the tasks at issue.

I. LEGAL STANDARD

"The starting point for establishing the proper amount of [a fee] award is the number of hours reasonably expended, multiplied by a reasonable hourly rate." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994). This determination is referred to as the lodestar rate. The reasonable hourly rate is typically determined by looking to the "prevailing market rates in the relevant community," which is "ordinarily the community in which the court where the action is prosecuted sits." *Id.* at 175 (citation omitted). "The fee applicant bears the burden of proving the reasonableness of the hours expended and the requested hourly rates, which generally requires submission of the attorney's own affidavit and timesheets as well as satisfactory specific evidence of the prevailing market rates." *Crump v. U.S. Dep't of Navy*, 245 F. Supp. 3d 692, 699 (E.D. Va. 2017) (internal quotation marks and citation omitted).

The court may adjust this initial calculation by looking to the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), the so-called "*Johnson* factors." *Rum Creek Coal Sales, Inc.*, 31 F.3d at 175. They are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the

experience, reputation, and the ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* "'[T]o the extent that any of the *Johnson* factors has already been incorporated into the lodestar analysis,' such factor(s) should not later be considered a second time to make an upward or downward adjustment to the lodestar figure because doing so would 'inappropriately weight' such factor." *Crump*, 245 F. Supp. 3d. at 699 (quoting *McAfee v. Boczar*, 738 F.3d 81, 91 (4th Cir. 2013), *as amended* (Jan. 23, 2014).

The defendants request a combined $667,544 in attorneys' fees for 1,526 hours of work[1] by seven partner-level attorneys, one associate-level attorney, one law clerk, and four paralegals along with other staff support. They further request $38,291.10 in expert fees for the services of Richard Quindry, a photographic

---

[1] I reach a slightly different calculation based on the hours claimed by counsel in their declarations. Specifically, counsel requested 781.3 hours for attorneys at Battey & Bohn, PLC (739.9 hours on the sanctions motion and 41.4 hours on the fee request); 500.7 hours for attorneys and staff at Muskin & Farmer, LLC; 185.8 hours for attorneys and staff at McGuireWoods, LLC (145.8 hours on the sanctions motion and 40 hours on the fee request); and 59.85 hours for attorneys at Porter Wright Morris & Arthur (55.75 hours on the sanctions motion and 4.1 hours on the fee request). Am. Mot. for Att'y's Fees, Bohn Decl. ¶ 20, ECF No. 188-4; *Id.*, Wheatley Decl. ¶ 9, ECF No. 188-8; *Id.*, Miller Decl. ¶¶ 21–23, ECF No. 188-6; *Id.*, Battey Decl. ¶ 14, ECF No. 188-1. This amounts to a total of 1,527.65 hours. Nevertheless, the court will adopt the defendants' request of 1,526 hours.

forensic expert, and Michael Wenk, a regulatory expert, and $341.23 in "copy costs."[2] Thus, the total amount sought by defendants is $706,177.

## II. ATTORNEYS' FEES.

### A. Reasonable Rate.

The defendants contend that that the Washington, D.C., metro area and Cincinnati, Ohio, are the relevant communities for determining the appropriate hourly rates because the subject matter of the case is complex and highly specialized with national and international implications. The defendants' attorneys submitted affidavits setting forth their proposed hourly rates, ranging from $385 to $915 per hour, that are either below or within the prevailing rate according to the Laffey Matrix[3] and U.S. Attorney's Office (USAO) Attorneys' Fees Matrix[4] given the

---

[2] This amount also includes express delivery charges.

[3] The *Laffey* Matrix is an "official statement of market-supported reasonable attorney fee rates which was adopted, and is periodically updated, by the United States Court of Appeals for the District of Columbia." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009). It pertains "to hourly rates of [federal] litigation attorneys in Washington, D.C." *Id.* at 245.

[4] The USAO Attorneys' Fees Matrix "calculates appropriate hourly rates for attorneys based on data regarding billing rates for all types of lawyers in the DC Metro Area," whereas the *Laffey* Matrix "is based on rates for attorneys practicing federal litigation in the District of Columbia." Am. Mot. for Att'y's Fees, Bohn Decl. Exs. at 402, ECF No. 188-5.

attorneys' experience and reputation.[5] The defendants further seek $545 per hour for associate time and $150–$395 per hour for paralegal and law clerk time.

In response, the plaintiff argues that the defendants overstate the level of complexity in this case, as the fee award is limited to legal work pertaining only to the sanctions motion and the underlying merits of the intellectual property dispute are not at issue. The plaintiff further contends that the court should use the prevailing rate in the Western District of Virginia. The plaintiff provided in support an affidavit from Kevin Holt, an attorney in Roanoke, Virginia, who opined, based on his experience practicing intellectual property law in this district, as to the prevailing

---

[5] The defendants note that they seek an hourly rate that is below the prevailing rate in the Washington, D.C., metro area for similarly experienced attorneys for Shawn R. Farmer, a founding partner with Muskin & Farmer LLC, a Philadelphia area law firm, with approximately 17 years' experience in intellectual property law, and Geoffrey Bohn with approximately 24 years' civil litigation experience and approximately 16 years' experience in intellectual property litigation, and Robert Battey with approximately 22 years' experience in civil litigation and approximately 15 years' experience in intellectual property litigation, partners with Bohn & Battey, PLC, an Arlington firm. Specifically, Farmer, Bohn, Battey, and Steven Albro, an attorney with Bohn and Battey, seek $385 per hour, despite claiming that they could be entitled to between $591 and $919 per hour. Am. Mot. for Att'y's Fees, Farmer Decl. ¶ 9, ECF No. 188-2; *Id.*, Bohn Decl. ¶ 3, ECF No. 188-4; *Id.*, Battey Decl. ¶ 10, ECF No. 188-1. Farmer also requests $150 per hour for his law clerk and paralegal. *Id.*, Farmer Decl. ¶ 22, ECF No. 188-2. However, the other four attorneys' rates are much higher. Martin Miller and Jay Yurkiw, partners at Porter Wright Morris & Arthur, LLP, who practiced out of the firm's Cincinnati and Columbus offices, with experience in intellectual property law, request $465–$525 per hour based on standard rates in the Southern District of Ohio. *Id.*, Miller Decl. ¶¶ 12, 13, ECF No. 188-6. Lucy Wheatley, a partner at McGuireWoods, LLP, a Richmond-based firm, with 14 years' experience as an intellectual property attorney and who specializes in Lanham Act litigation, requests $915 per hour, and Matthew Rosendahl, an associate at McGuireWoods, with three-years' experience in civil litigation, requests $545 per hour. *Id.*, Wheatley Decl. ¶¶ 6A, 6B, ECF No. 188-8. Wheatley also requests $395–$345 per hour for her three paralegals. *Id.* ¶ 7.

rate for attorneys in similar cases. Holt Decl. ¶ 18, ECF No. 196. Specifically, he stated that a reasonable rate is $400 per hour for senior partners; $290–$330 per hour for junior partners or senior associates; $225–$250 per hour for junior associates; and no more than $185 per hour for paralegals. *Id.* ¶ 24.

I agree that the relevant market in this case is the Western District of Virginia. *See, e.g.*, *Latson v. Clarke*, No. 1:16CV00039, 2018 WL 5802473, at *2 (W.D. Va. Nov. 6, 2018). While the defendants suggest that they needed to retain counsel outside of the district due to the complex and specialized nature of the case, there are attorneys in this district with similar skills and experience that are fully capable of litigating what is essentially a discovery dispute. The imposition of sanctions for fraud upon the court is not limited to intellectual property cases. Thus, the assessment of fees in ordinary civil litigation may be considered, as should cases involving discovery disputes where the fees requested are likewise based on litigation misconduct. The defendants simply have failed to show that the higher rates of the Washington, D.C., metro area and Cincinnati, Ohio, are justified. *See Sines v. Kessler*, No. 3:17-cv-00072, 2021 WL 7906208, at *5 (W.D. Va. Dec. 1, 2021).

In assessing a reasonable fee, I am not required to award the same hourly rate as previously determined to be reasonable, *Latson*, 2018 WL 5802473, at *2, but I may still consider awards in past cases, *Sines*, 2021 WL 7906208, at *4.

Accordingly, I find that an hourly rate of $400 per hour for senior partners, $250 per hour for associates, and $150 per hour for paralegals and law clerks is reasonable. In reaching my determination, I credit Holt's expert opinion that such rates would be standard even for intellectual property litigation in this district. This rate is also consistent with other fee awards involving similar circumstances in this district. *See, e.g.*, *Sines*, 2021 WL 7906208, at *4.

## A. Reasonable Hours.

Having determined the appropriate hourly rates, I must next calculate a reasonable number of hours expended by the defendants' counsel investigating the misconduct and litigating the sanctions motion and preparing the fee request. "Before seeking an award, [c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Crump*, 245 F. Supp. 3d at 708 (internal quotation marks and citation omitted). Counsel must also "describe specifically the tasks performed" and be "sensitive to the need to avoid use of multiple counsel for tasks where such use is not justified by the contributions of each attorney." *Rum Creek Coal Sales, Inc.*, 31 F.3d at 180. "Generalized billing by multiple attorneys on a large case often produces unacceptable duplication." *Id.* The Fourth Circuit has recognized that a court may reduce or exclude entirely from its calculation fees that are incurred by multiple attorneys where one attorney would have sufficed. *See, e.g.*, *Trimper v.*

*City of Norfolk,* 58 F.3d 68, 76 (4th Cir. 1995) (reducing "allowable hours because of overstaffing of attorneys is not an abuse of discretion").

The defendants assert the relevant time period for an award is from April of 2020 until the present, arguing that even prior to the plaintiff filing the Amended Complaint they were suspicious of the alleged product sales and started to investigate possible fraud. The plaintiff's primary criticism is that the staffing utilized by defendants to investigate and litigate the sanctions motion — including seven senior partner-level attorneys — was unreasonably top-heavy and resulted in duplicative work.[6] The plaintiff's expert further opined that the scope of the work involved "would require no more than 500 hours of total combined time" from a team of one senior partner, one junior partner or senior associate, one junior

---

[6] The plaintiff also claims that there are clerical inaccuracies and that there are instances of double or triple invoicing. Pl.'s Resp. Opp'n 4–7, ECF No. 195. However, the defendants have admitted there was a typo in the Muskin & Farmer invoices for January, February, and March 2021, such as the declaration should have read 20*22* and not 20*21*. Defs.' Reply Supp. 4–5, ECF No. 197. Moreover, the double or triple invoicing allegation appears to be based on a misunderstanding of the defendants' time-keeping records in that the fee totals included at the bottom of each monthly invoice are not offered as representative of totals requested for purposes of this motion. *Id.* at 3–4. Finally, the plaintiff argues that the defendants cannot recover fees associated with the pending motion, as my order provides that "defendants are entitled to attorneys' fees and costs *spent on investigating and litigating* FLP's misconduct." *For Life Prods., LLC v. Virox Techs., Inc.,* 2022 WL 1670097, at *11 (emphasis added). But that is an overly narrow reading of my order. The court fully expected that the defendants' attorneys would be required to spend additional time and expense to prepare a fee request, and it is customary to compensate this time so long as it is reasonable, applying all of the same *Johnson* factors. *Trimper,* 58 F.3d at 77.

associate, and one paralegal, "spread evenly over the team's members." Holt Decl. ¶ 24, ECF No. 196.

The defendants have submitted sufficient documentation. However, a close review of the invoices reveals that the level of detail is vague, even if the tasks were billed in small increments. *See, e.g.*, Am. Mot. Att'y's Fees, Farmer Decl. Ex. A at 103, ECF No. 188-3 ("Follow-up call w/ GB re case status"). The records further indicate unnecessary duplication of effort with a significant number of overall hours spent on internal communications, as well as at least some billing of work that appears unrelated to the sanctions motion. *Id.* at 39–40 ("Rec'd and began review of QVC and Ruggiero Motions to Dismiss" on Dec. 21, 2020); *Id.* Bohn Decl. Ex. A at 92, ECF No. 188-5 ("drafted Rule 15 Motion to Dismiss").[7] The defendants further request fees for nearly 60 hours performed by two attorneys at Porter Wright Morris & Arthur, LLP. However, a review of those invoices shows that the work was almost entirely duplicative, such as reviewing the experts' reports and correspondence with other team members. Moreover, it appears that the single associate-level attorney in this case billed only 38 hours, less than 2.5 percent of the billable hours total. Holt Decl. 20 n.1, ECF No. 196; Wheatley Decl. ¶ 6B, ECF No.

---

[7] Prior to investigating and litigating the sanctions motion, the parties engaged in significant motions practice, including several motions to dismiss for failure to state a claim with regard to the Complaint and the First Amended Complaint, as well as to dismiss for lack of jurisdiction as to third-party defendants.

188-8. I recognize that four of the attorneys work for smaller law firms that do not have the same staffing resources as larger firms, particularly as to junior-level attorneys. Nevertheless, the number of hours is excessive based upon the number of attorneys and staff involved.

A modified staffing structure is further appropriate here because contrary to the defendants' assertions, the fraud perpetrated in this case was "relatively straightforward." *VFI Assocs., LLC v. Lobo Mach. Corp.*, No. 1:08CV00014, 2012 WL 975705 at *7 (W.D. Va. Mar. 22, 2012) (reducing fee request by 50% in RICO case where fraud was straightforward"); *Zen42 LLC v. Wash. & Lee Univ.*, No. 6:17-cv-00053, 2018 WL 4625627, at *3 (W.D. Va. Sept. 26, 2018) (reducing hours by 65% based on unreasonable overbilling in straightforward breach-of-contract case). In addition, "[t]here were no significant novel or complex legal issues." *VFI Assocs., LLC,* 2012 WL 975705 at *7. The Fourth Circuit had clearly set forth the applicable legal standard for resolution of the sanctions motion in *United States v. Shaffer Equip. Co.*, 11 F.3d 450 (4th Cir. 1993), and "the facts, once uncovered, were clear." *VFI Assocs., LLC,* 2012 WL 975705 at *7. The plaintiff also did not dispute the facts or challenge the defendants' experts' qualifications and opinions. In other words, while the extent of the misconduct in this case was shocking, it was not particularly well-hidden.

The defendants further contend that their investigation began as early as April of 2020 and request fees for work during that time. But the Amended Complaint — with its six fabricated exhibits — was not filed until September of 2020. My ruling was based upon those exhibits that were exposed as fabrications by Quindry's expert analysis. The number of hours billed by the attorneys investigating the claims prior to any fraudulent filing therefore appears excessive.

Accordingly, I find that the movants have failed to demonstrate that all of the claimed hours are reasonable. In particular I have determined that the ratio of partner-level attorneys to associate-level attorneys and the use of multiple paralegals has not been shown to be reasonable under the circumstances. I will therefore reduce the 1,526 hours requested by one-third for a total of 1,018 hours.[8] I will then exclude from my calculation fees requested for five partner-level attorneys and two paralegals and a law clerk at their respective hourly rates based on my determination that the scope of the work could have been performed by two senior partner-level attorneys, one associate-level attorney, and two paralegals. I thereafter will spread the reduced total hours (1,018 hours) equally across this modified team, or 203.6 hours per person, at the aforementioned hourly rates. Accordingly, the revised

---

[8] The billable hours total requested and subsequently modified by the court includes both hours spent investigating and litigating the sanctions motion as well as those spent in preparing the fee request. As explained, *supra* note 6, I do not find persuasive the plaintiff's argument that I may award fees based only on the former.

lodestar figure is $274,860 based on two partner-level attorneys (203.6 hours at $400 per hour), one associate-level attorney (203.6 hours at $250 per hour), and two paralegals (203.6 hours each at $150 per hour).

### B. Remaining *Johnson* Factors.

Having calculated the lodestar figure, I must next consider whether to award the full amount of fees requested, or to increase or reduce that amount, based upon the remaining *Johnson* factors. I have already considered factors one (time and labor); two (novelty and difficulty); three (level of skill required); five (customary fee); nine (experience, reputation, and ability of the attorneys); and twelve (awards in similar cases). I further find that factors six, seven, ten, and eleven are not relevant to this case. The only remaining factors are four and eight and neither warrant a departure above or below the modified lodestar amount.

As to factor four — preclusion of employment by the attorney for accepting the case — it is argued by defendants that three of the attorneys work at small firms and were unable to take on other cases due to the demanding nature of this litigation. But I am not convinced that investigating and litigating *the sanctions motion* was a significant factor in that regard, as their involvement in the case was presumably expected to be a significant undertaking even without the fraud issue. I also have determined that the team over-staffed this matter.

Considering factor eight — amount in controversy and results obtained — the economic stakes of the litigation was high for both parties and this factor clearly favors the defendants. The defendants' attorneys undoubtedly performed a significant service for their clients by securing a dismissal of the plaintiff's claims with prejudice — arguably the best possible outcome in the case. Such a result is also exceedingly rare, as dismissal is the most severe sanction imposed by the court and is typically reserve for only the most egregious conduct. *Plastech Holding Corp. v. WM Greentech Auto. Corp.*, 257 F. Supp. 3d 867, 878–79 (E.D. Mich. 2017).

For these reasons, I will adjust the total award upward by one-third, or $91,620. I find that this case presents the "rare" and "exceptional" circumstance where increasing the award based solely on this factor is warranted. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *see also Shipes v. Trinity Indus.*, 987 F.2d 311, 322 (5th Cir. 1993) (holding upward adjustments based on exceptional results is appropriate); *Junior v. Infinity Ins. Co.*, No. 6:18-cv-1598-WWB-EJK, 2021 WL 4944307, at *4 (M.D. Fla. Mar. 25, 2021) (upward adjustment based on results obtained where the party recovered the full amount that would have been secured at trial).

Therefore, the total amount for attorneys' fees is $366,480.

## II. EXPERTS' FEES AND COSTS.

In addition to attorneys' fees, the defendants request $38,291.10 for reimbursement of the fee of the two expert witnesses, Richard Quindry and Michael Wenk. The plaintiff, without citing any authority, argues that the court should reduce the requested amount because Quindry's report included legal opinions that were not considered by the court. I do not agree that this is a permissible basis for reducing the fee award. I further find that the experts' reports were consequential in proving the plaintiff's fraud and should be fully compensated. The plaintiff also does not contest the $341.23 in copy costs. Thus, I will award the full amount in experts' fees and copy costs, in addition to the modified attorneys' fee amount, for a total of $405,112.33.

## III. CONCLUSION.

For the foregoing reasons, it is **ORDERED** that the defendants' Amended Motion for Attorney Fees, ECF No. 188, is GRANTED, as modified by this Opinion and Order, and that the defendants are hereby awarded attorneys' fees and costs against the plaintiff in the amount of $405,112.33.

ENTER: July 29, 2022

/s/ JAMES P. JONES
Senior United States District Judge